WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Perkins,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carolyn w. Colvin, Acting Commissioner, Social Security Administration,<br><br>　　　　　Defendant. | No. CV-12-01801-PHX-JAT<br><br>**ORDER** |

　　　　Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title XVI application for supplemental security income based on disability.

**I.　　PROCEDURAL BACKGROUND**

　　　　Plaintiff Michael Perkins filed a Title XVI application for Supplemental Security Income benefits on February 13, 2008. (Record Transcript ("TR") 129). Plaintiff listed his illnesses, injuries, or conditions on his application as cardio myopathy, bipolar disorder, and a head injury. (TR 162). Plaintiff's application was denied initially. (TR 47). On reconsideration, a hearing was held on August 24, 2010 before an ALJ, who issued an unfavorable decision on September 20, 2010. (TR 31; TR 12-22). The Appeals Council denied Plaintiff's request for review of the hearing decision on June 27, 2012. (TR 1-3).

　　　　On August 22, 2012, Plaintiff filed his Complaint for Judicial Review of the

Administrative Determination of Claim, which is the subject of this appeal (Doc. 1). Plaintiff argues that the Court should vacate the Administrative Law Decision because: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating physicians; (2) the ALJ improperly relied on grids when considering jobs that exist in the national economy and failed to consider non-exertional limitations; and (3) the ALJ erred in rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for so doing. (Doc. 13).

## II. LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the administrative law judge's conclusions and the evidence that detracts from the administrative law judge's conclusions. *Id.* If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination for that of the ALJ. *Id.* Additionally, the administrative law judge is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The

Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

### B.    Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1.    First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2.    If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." 20 C.F.R. § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. 20 C.F.R. at § 404.1520(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick,* 157 F.3d at 721.

### III. ANALYSIS

In this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since February 13, 2008, (2) had the following severe impairments: cognitive and short-term memory deficits related to a closed head injury sustained in December 2007, a history of cardiomyopathy, nicotine dependence, essential hypertension, and sensorineural hearing loss in the left ear, (3) did not have an impairment or combination of impairments specifically listed in the regulations, (4) had the residual functional

capacity to perform the full range of sedentary, unskilled work and, because of moderate limitations/restrictions in his ability to understand, remember, and carry out detailed and complex instructions due to cognitive/memory deficits, he is limited to unskilled work from a mental standpoint, (5) is unable to perform any past relevant work, and (6) can perform jobs that exist in significant numbers in the national economy. (TR 12-22). As a result of this analysis, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. (TR 22).

As referenced above, Plaintiff argues that the Court should vacate the Administrative Law Decision because: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating physicians; (2) the ALJ improperly relied on grids when considering jobs that exist in the national economy and failed to consider non-exertional limitations; and (3) the ALJ erred in rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for so doing. (Doc. 13). The Court will address each of Plaintiff's arguments in turn.

### A. Whether the ALJ Erred in Rejecting the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Kelly and Dr. Gunnala because (1) even if those doctors were not entitled to controlling weight, the ALJ erred in rejecting the opinions entirely; (2) the ALJ erred in not using all of the factors in 20 C.F.R. 404.1527 and 416.927; and (3) Dr. Kelly and Dr. Gunnala's opinions were supported by their records and consultative examination.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is usually entitled to "substantial weight." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(d). *Orn*, 495 F.3d at 631; SSR 96–2p at 4. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature

1  and extent of the treatment relationship; (3) the extent to which the opinion is supported
2  by relevant medical evidence; (4) the opinion's consistency with the record as a whole;
3  and (5) whether the physician is a specialist giving an opinion within his specialty. 20
4  C.F.R. § 404.1527(d).

5  If a treating physician's opinion is not sufficiently supported by medical evidence
6  and other substantial evidence in the case, however, the ALJ need not give the opinion
7  controlling weight. *Orn*, 495 F.3d at 631.  Furthermore, if the treating doctor's opinion is
8  contradicted by another doctor, the ALJ may reject the treating doctor's opinion by
9  giving specific and legitimate reasons for doing so.  *Id.* at 632.

10  In this case, after a discussion of the medical evidence in Plaintiff's case, the ALJ
11  rejected the opinions of Dr. Kelly and Dr. Gunnala as being: (1) unsupported by
12  substantial medical evidence set forth with their own progress/treating notes, (2)
13  inconsistent with the findings set forth within the progress/treating notes of more
14  specialized physicians, and (3) inconsistent with the medical opinions of the consultative
15  examiners and State Agency medical consultant.

16  Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Kelly and Dr.
17  Gunnala because (1) even if those doctors were not entitled to controlling weight, the
18  ALJ erred in rejecting the opinions entirely; (2) the ALJ erred in not using all of the
19  factors in 20 C.F.R. 404.1527 and 416.927; and (3) Dr. Kelly and Dr. Gunnala's opinions
20  were supported by their records and consultative examination.

21  To the extent that the ALJ provided specific and legitimate reasons for rejecting
22  Dr. Kelly and Dr. Gunnala's opinions because those opinions were contradicted by other
23  doctors, it was appropriate for the ALJ to reject those opinions.  *Orn*, 495 F.3d at 632.

24  The Commissioner argues that the ALJ provided specific and legitimate reasons
25  for rejecting the opinions of Dr. Gunnala and Dr. Kelly.

26  Here, the ALJ noted that Dr. Gunnala's opinion was not supported by his own
27  progress/treating notes.  In a hand-written statement dated December 17, 2008, Dr.
28  Gunnala reported that Plaintiff was "unable to work" due to cardiomyopathy and chronic

fatigue, among other conditions" and that "his current disability may last up to 1 year until re-evaluated." (TR 608). On February 2, 2009, Plaintiff reported to Dr. Gunnala that he was doing fine. (TR 592). On May 27, 2009, Plaintiff reported to Dr. Gunnala that he was not sleeping well and was not being attentive. Examination demonstrated that Plaintiff was alert and oriented, and demonstrated normal heart, lungs, and neurological functioning. (TR 699). Dr. Gunnala recommended that Plaintiff consult a psychiatrist about his racing mind, not sleeping well, and his history of bipolar disorder. (TR 698). Dr. Gunnala further recommended that Plaintiff continue his current medications. (*Id.*).

The Commissioner argues that the ALJ acknowledged that Plaintiff had severe impairments, but found that Dr. Gunnala's opinion as to the severity of those limitations was contradicted by his own treating notes and was inconsistent with the opinions of more specialized physicians, namely Dr. Schultz, a treating neurologist, Dr. Wolfson, a treating cardiologist, Dr. Oizumi, an examining licensed clinical psychologist, and Dr. Bliklen, an examining neurologist. Indeed, the opinions cited by the ALJ and the evidence in the record supports the ALJ's specific and legitimate reasons for rejecting the opinion of Dr. Gunnala as to the severity and extent of Plaintiff's limitations.

During a July 6, 2009 follow-up with Dr. Gunnala, Plaintiff reported that he continued to feel tired. (TR 696). Examination demonstrated that Plaintiff was alert and oriented, and demonstrated normal heart, lungs, and neurological functioning. (TR 695). Dr. Gunnala recommended that Plaintiff follow-up with a cardiologist and a psychiatrist. (TR 696). Also on July 6, 2009, Dr. Gunnala completed a medical assessment wherein he found that Plaintiff had significant physical limitations. (TR 688-690). On April 27, 2010, Plaintiff requested a neurological referral from Dr. Gunnala for cognitive testing. (TR 694). Dr. Gunnala noted that Plaintiff's significant other reported that Plaintiff had been noncompliant with blood pressure medications. (TR 694). On May 21, 2010, Plaintiff reported to Dr. Gunnala that he had been doing fine lately. (TR 691). Examination demonstrated that Plaintiff was alert and oriented, and demonstrated normal

heart, lungs, and neurological functioning. (TR 692).

The ALJ stated that Dr. Gunnala's opinion as to the extent of Plaintiff's functional limitations should be discounted because it was not supported by his own progress/treating notes. Indeed, Dr. Gunnala's opinion was inconsistent with his repeated findings that Plaintiff was alert and oriented, and demonstrated normal heart, lungs, and neurological functioning and Plaintiff's reports to Dr. Gunnala that he was doing fine.

Moreover, the ALJ also found that Dr. Gunnala's opinion as to the extent of Plaintiff's functional limitations was inconsistent with the findings set forth within the progress/treating notes of more specialized physicians and the medical opinions of the consultative examiners and State Agency medical consultant. Indeed, on April 16, 2008, Plaintiff's treating neurologist, Dr. Schultz, reported that Plaintiff's headaches were greatly diminished, his balance and walking were much improved, Plaintiff was still deaf in the left ear, Plaintiff was awake and alert with no aphasic error or major memory deficit and that his cranial nerves were intact with the exception of the deafness in the left ear. (TR 470). Dr. Schultz recommended that Plaintiff take Aleve and Tylenol for his residual headaches and to only use Vicodin as a back-up. (*Id.*).

Dr. Oizumi, a consultative licensed clinical psychologist, examined Plaintiff and found that Plaintiff might have difficult adhering to a schedule, had difficult adapting to changes in the environment, had mild memory deficits in several areas of memory functioning, unimpaired social functioning, could interact with the public, and could perform detailed and simple tasks, request assistance, respond to criticism, be aware of hazards, and use public transportation. (TR 499, 502-503).

On July 29, 2009, Dr. Wolfson, a treating cardiologist, reported that a recent echocardiogram revealed preserved left ventricular functions without significant valvular disease, a stress test revealed reversible defect, and Plaintiff was not having symptoms and did not require further intervention. (TR 643, 647-650).

On April 28, 2010, an examination by Dr. Bliklen, an examining neurologist revealed that Plaintiff was alert and oriented, demonstrated fluent speech, intact cranial

1 nerve functioning with the exception of hearing loss, intact cerebellar functioning, the
2 ability to recall, the ability to perform "serial 7's," the ability to spell "world" backwards
3 correctly, normal extremity muscle strength, bulk, and tone throughout, normal reflexes
4 throughout, normal sensory functioning, and a normal gait. (TR 685-686).

5 Based on the facts as outlined above, the ALJ gave specific and legitimate reasons
6 for rejecting the opinion of Dr. Gunnala that are supported by the record. Although
7 Plaintiff argues that the record can be read to support Dr. Gunnala's conclusions, this
8 Court cannot substitute its judgment for that of the ALJ. *See Batson v. Comm'r of the*
9 *Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003) ("[T]he Commissioner's findings
10 are upheld if supported by inferences reasonably drawn from the record, and if evidence
11 exists to support more than one rational interpretation, we must defer to the
12 Commissioner's decision." (internal citations omitted).

13 Likewise, the opinions cited by the ALJ and the evidence in the records support
14 the ALJ's specific and legitimate reasons for rejecting the opinions of Dr. Kelly. The
15 ALJ stated that Dr. Kelly's opinion as to the extent of Plaintiff's functional limitations
16 should be discounted because it was not supported by his own progress/treating notes.

17 Dr. Kelly conducted audiological testing on Plaintiff on December 29, 2008 and
18 found almost no remaining hearing on the left, and right hearing loss with normal speech
19 reception threshold (Tr. 682-683). Dr. Kelly concluded that Plaintiff's right hearing was
20 probably better than it tested that date, and recommended further testing due to
21 conflicting findings (Tr. 683). Thereafter, Dr. Kelly conducted audiological testing on
22 Plaintiff on January 15, 2009 and found bilateral hearing loss (Tr. 680). Dr. Kelly
23 recommended right ear amplification (Tr. 680). On April 19, 2010, Dr. Kelly stated that
24 Plaintiff had bilateral hearing loss, but that Plaintiff had done well with a hearing aid on
25 the right for amplification (Tr. 677). He also stated that Plaintiff was not able to be
26 employed due to cognitive deficits, and that he should not work around heavy machinery
27 or equipment (Tr. 677).

28 The Commissioner argues that Dr. Kelly's conclusion that Plaintiff had done well

1 with a hearing aid on the right for amplification and would benefit from cognitive therapy is not consistent with his opinion that Plaintiff is not able to be employed full or part time because of hearing and cognitive deficits. (TR 676-677). In combination with the inconsistency between Dr. Kelly's opinions and that of Plaintiff's other doctors, the ALJ could have found that Dr. Kelly's conclusion that Plaintiff could not work full or part time was not supported by his own medical findings. Moreover, Dr. Kelly specifically opined that he thought Plaintiff's condition would improve and the ALJ could have properly found that, in light of such improvement, Dr. Kelly's opinion could not serve as a basis for a finding of disability. Based on the facts as outlined above, the ALJ gave specific and legitimate reasons for rejecting the opinion of Dr. Kelly that are supported by the record. Accordingly, the ALJ did not err in rejecting the opinions of Dr. Kelly and Dr. Gunnala. *See Batson*, 359 F.3d at 1193.

### B.   Whether the ALJ Erred by Rejecting Plaintiff's Symptom Testimony in the Absence of Clear and Convincing Reasons

Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the Record for rejecting Plaintiff's subjective symptom testimony. In response, the Commissioner argues that the ALJ properly considered Plaintiff's subjective complaints, and provided legally sufficient reasons for discounting them.

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to be the cause of some pain, the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749-750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)). The ALJ must make specific findings based on the record for discounting a claimant's subjective complaints. *See Savage v. Astrue*, No. CV-11-2103-PHX-JAT, 2013 WL 551461, at *7 n.1 (D. Ariz. Feb. 13, 2013). In this case, there is no question that the ALJ found that there was medical evidence of underlying impairments

that would be reasonably likely to cause pain. *See* TR 17 ("the claimant's medically determinable impairments could reasonably expect to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.").

The question then is whether the ALJ discredited Plaintiff's testimony of pain solely because such pain was not supported by objective medical evidence. "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (quoting *Bunnell,* 947 F.2d at 345–46; *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). Factors that the adjudicator should consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d at 346 (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

"[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603). "Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (internal citation omitted). "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Id.*

In this case, the ALJ made specific findings to support his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his conditions were not fully credible and did not prevent him from performing unskilled work. Here, the ALJ specifically found that Plaintiff was not fully credible because of: (1) his sketchy work history, (2) his history of incarceration and/or other penalties received for fraudulent acts and/or illicit drug use until at least 2007, (3) his failure to quit smoking despite his physician's advice to quit, (4) the fact that he had been found to be noncompliant with his doctor's orders to take his blood pressure medications on at least one occasion despite the fact that taking those medications helped alleviate his symptoms, (5) his description of his normal activities, including caring for his own personal needs without difficulty or assistance, performing light housecleaning, preparing simple meals, tending dogs, working in the garage with his tools, working on bicycles, spraying for weeds, driving an automobile, and visiting others and shopping, (6) the lack of objective support for the opinions of Dr. Kelly and Dr. Gunnala, (7) the contradictory opinion of his treating cardiologist, (8) no evidence of routine treatment other than medications, and (8) records showing an improvement in Plaintiff's conditions of severe and debilitating pain, fatigue, and shortness of breath since July 2005. (TR 17-18).

Although Plaintiff objects to a few of the factors listed by the ALJ, the ALJ properly made a number of "specific findings that are supported by the record" in finding that Plaintiff's symptom testimony was not fully credible.

### C. Whether the ALJ Improperly Relied on Grids and Failed to Consider Non-Exertional Limitations at Step 5

Plaintiff argues that the ALJ failed to consider non-exertional limitations and improperly relied on grids when considering jobs that exist in the national economy. In response, the Commissioner argues that the ALJ properly relied on the grids pursuant to the regulations.

At step five of the disability evaluation process, the burden shifted to the Commissioner to show that Plaintiff could engage in gainful employment in the national

1    economy. *See Reddick*, 157 F.3d at 721.  The Commissioner can make this showing in
2    one of two ways.  First, a vocational expert can be called to evaluate a factual scenario
3    and testify about "what kinds of jobs the claimant still can perform and whether there is a
4    sufficient number of those jobs available in the claimant's region or in several other
5    regions of the economy to support a finding of not disabled."  *Desrosiers v. Sec'y of*
6    *Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (internal citation omitted).
7    Second, the grids can be used to determine if a particular claimant is capable of
8    performing certain kinds of work in significant numbers in the national economy.  *Id.*

> The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment. They may be used, however, only when the grids accurately and completely describe the claimant's abilities and limitations. When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. In such instances, the Secretary must take the testimony of a vocational expert, and identify specific jobs within the claimant's capabilities.

*Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotations and citations omitted).   Non-exertional limitations that are not covered by the Grids are those that limit an individual's ability to work "without directly affecting his or her strength. . . . Examples of non-exertional limitations are mental, sensory, postural, manipulative, or environmental (e.g. [,] inability to tolerate dust or fumes) limitations." *Desrosiers*, 846 F.2d at 579. However, "[i]t is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines." *Id.* at 577.

Here, Plaintiff argues that he suffers from non-exertional limitations related to his cognitive impairments.  Plaintiff points to the opinion of Dr. Oizumi, a consultative licensed clinical psychologist, who stated that Plaintiff would likely have trouble adhering to a consistent schedule and has difficult adapting to changes in his

environment. (TR 503). Plaintiff argues that the ALJ also improperly omitted consideration of Mr. Perkins' fatigue, memory and concentration limitations, which are non-exertional limitations requiring that the ALJ consult a vocational expert. The Commissioner argues that Plaintiff's limitations are consistent with the basic mental demands of competitive, remunerative, unskilled work. While this may be true, Plaintiff did have non-exertional limitations that were not considered by the ALJ. As such, the ALJ was required to take the testimony of a vocational expert.

## IV.   CONCLUSION

Accordingly, the ALJ erred at Step Five in failing to take the testimony of a vocational expert.

Based on the foregoing,

**IT IS ORDERED** that this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order. The Clerk of the Court shall enter judgment.

Dated this 30th day of July, 2013.

James A. Teilborg
Senior United States District Judge